IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHILLZ VENDING, LLC, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>GREENWOOD MOTOR LINES, INC.<br>d/b/a R+L CARRIERS, *et al.*,<br><br>　　　　Defendants. | **MEMORANDUM DECISION ON GREENWOOD MOTOR LINES, INC.'S  AND CORLETT EXPRESS TRUCKING, INC.'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No.   4:23-cv-065-AMA<br><br>Hon. Ann Marie McIff Allen |

Defendants Greenwood Motor Lines, Inc. d/b/a R+L Carriers ("R+L") and Corlett Express Trucking, Inc. ("Corlett Express") have separately moved for summary judgment.  In support they offer identical arguments that the Plaintiffs' state law claims of breach of contract and negligence are preempted by the Carmack Amendment[1] and must be dismissed.  They both also argue, albeit on slightly different grounds, that Plaintiffs' separate claims under the Carmack Amendment fail because the Plaintiffs have not established a prima facie case.

---

[1]　　The Carmack Amendment was initially enacted in 1906 as an amendment to the Interstate Commerce Act of 1887.  Among other things, the Carmack Amendment required carriers to issue bills of lading for property they received for transportation and held them liable for any loss, damage, or injury to the property transported under the bills of lading. *See Babcock & Wilcox Co. v. Kansas City S. Ry. Co.*, 557 F.3d 134, 137 (3d Cir. 2009).  Its current version was part of the ICC Termination Act of 1995 under which the general liability provision was renumbered as 46 U.S.C. § 14706(a)(1).

Plaintiffs concede that their state law claims are preempted by the Carmack Amendment.[2] The court will therefore GRANT the Defendants' motions as to those claims.[3] Plaintiffs, however, oppose Defendants' motions on the Carmack Amendment claims arguing that they have presented a prima facie case and that material factual issues remain in dispute. Because the court concludes that there remain material facts in dispute concerning these claims, Defendants' motions are DENIED as to those claims.[4]

BACKGROUND

Water is essential to life. Ice, while not necessarily life-supporting, is for many equally essential. We use it to store food. We cut it into blocks, we shape it into cubes, and we crush it. We use it to sooth aches and pains. We glide, slide, and

---

[2]  (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57 at 9; Pls' Mem. in Opp'n to Corlett Express, ECF No. 66 at 8). *See Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1120 (10th Cir. 1989) (noting that "every circuit which has considered the matter … has either held or indicated that it would hold that the Carmack Amendment preempts state common law remedies") (citations omitted). To the extent that Plaintiffs attempt to make this concession contingent on the validity of their Carmack Amendment claim against R+L (*see* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 9) that effort is rejected. Plaintiffs do not cite any authority or offer any argument to support such a limitation. Nor can there be any dispute that R+L is a "carrier" as that term is construed under the Carmack Amendment and that the Carmack Amendment is applicable to the conduct at issue in this action.

[3]  Pursuant to Local Rule DUCivR 7-1(g), the court finds oral argument unnecessary and decides the motion based on the parties' written briefing.

[4]  Alternatively, Plaintiffs argued that Defendants' motions were premature and that under Federal Rule of Civil Procedure 56(d) the court should defer or deny the motions because additional discovery essential to their opposition is needed. (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 22.) Because the court has otherwise denied the motions, it declines to rule on this alternative argument.

-2-

climb on it for sport, entertainment, and challenge.  It can be beautiful, and it can create fear—e.g., "black ice."

In the early part of this country's history ice was cultivated as a crop.  As vividly recounted by Henry David Thoreau, back in the winter of 1846–47 at Walden Pond in Concord, Massachusetts his tranquility was disturbed when "a hundred Irishmen … came from Cambridge every day to get out the ice," bringing with them "many carloads of ungainly-looking farming tools—sleds, plows, drill-barrows, turf-knives, spades, saws, rakes."[5]  Using "grappling irons and block and tackles," these men harvested huge blocks of ice from the Pond that were then packed in hay and sawdust and sent on ships around the world to warmer climes.  Thoreau reflected that "[t]hus it appears that the sweltering inhabitants of Charleston and New Orleans, of Madras and Bombay and Calcutta, drink at my well."[6]  This natural harvest was eventually replaced by the advent of ice making machines.  In fact, in 1853—just a few years after Thoreau's encounter with the Hibernian ice cutters—Alexander Twinging, a minister, civil engineer, and professor of mathematics and natural philosophy, patented an "apparatus for making ice."[7]

 This action concerns a more modern ice-making apparatus.  On March 24, 2022, Plaintiff Chillz Vending, LLC ("Chillz") purchased two new "Ice & Water"

---

[5]   *See* HENRY DAVID THOREAU, WALDEN; OR, LIFE IN THE WOODS 453-58 (Ch. 16 "The Pond in Winter") (1854).

[6]   *Id.* at 459.

[7]   U.S. Patent No. 10221 (Nov. 8, 1853)

vending machines (the "Ice Vending Machines") from a Florida company, Everest Ice & Water Systems, Inc., for a total price of $92,290.[8] These Ice Vending Machines, which operate like a traditional vending machine, produce ice that can then be purchased directly from the vending machine. Under the purchase contract, Defendant Unishippers served as Everest's shipping and storage partner, and was tasked with handling the logistics of storing and shipping the Ice Vending Machines to Chillz at an address in Hurricane, Utah.[9]

In turn, Unishippers contracted with R+L to transport the Ice Vending Machines to Utah.[10] R+L picked up the Ice Vending Machines in Florida and transported them to Salt Lake City, Utah. R+L then arranged for Corlett Express to transport the Ice Vending Machines to their final destination in Hurricane, UT.[11] Although it is undisputed that Corlett Express transported the Ice Vending Machines from Salt Lake City to St. George, Utah, Corlett Express now claims that it hired Bakston Freight System, Inc.—a nonparty—to complete the delivery to Chillz in Hurricane.[12]

---

[8]  (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 3.) In addition to Chillz, there are three other named Plaintiffs in this action: John Read, Quinton Read and Blake Lesh. The Amended Complaint collectively identifies all four plaintiffs as "Chillz." (*See* Am. Comp., ECF No. 36, at 1.)

[9]  (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57at 4; Am. Compl., ECF No. 36, at ¶13.)

[10]  (*See* R+L's Mot., ECF No. 49, at 4.)

[11]  (*See id*. at 6.)

[12]  (*See* Corlett Express's Reply, ECF No. 69, at 3.)

Goods are transported like this in commerce every day across the United States. What make this a federal case is that when Chillz finally received the Ice Vending Machines it claims that they were damaged in transit.[13]

ANALYSIS

Under the Carmack Amendment liability attaches to motor carriers and freight forwarders for actual losses or injuries to the shipped property "caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States." 49 U.S.C. § 14706(a)(1); *see also Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964) (noting the prima facie standard and observing that once that standard is established the burden of proof is upon the carrier to show that it was free from negligence) (citation omitted). Notably, a carrier can be held liable for damage to the shipped property without regard to fault. *See Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192, 1196–97 (10th Cir. 2003).

In their summary judgment motions R+L and Corlett Trucking admit they are carriers who are subject to the Carmack Amendment.[14] Nevertheless, they argue that their motions should be granted because Plaintiffs cannot establish two of the three necessary elements of a Carmack Amendment claim. The three

---

[13]   (*See* Am. Compl, ECF No. 36, at ¶¶16–17, 32; *see also* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 8 (citing various declarations).)

[14]   (*See* R+L's Mot., ECF No. 49, at 10–11; Corlett Express's Mot., ECF No. 55, at 5, 8.) Indeed, it is for this very reason that preemption bars Plaintiffs' state law claims. *See Underwriters at Lloyds*, 890 F.2d at 1121.

elements that must be established are: "(1) delivery of the property to the carrier in good condition; (2) arrival of the property at the destination in damaged or diminished condition; and (3) the amount of its damages." *See Mercer*, 341 F.3d at 1196 (citing *Missouri Pac. R.R.,* 377 U.S. at 138); *Delta Stone Prod. v. Xpertfreight*, 304 F. Supp. 3d 1119, 1130 (D. Utah 2018).

In their motions, R+L and Corlett Express argue that Plaintiffs have not established the first and third elements. They claim that Plaintiffs have not and cannot establish that the Ice Vending Machines were delivered to R+L and Corlett Express in "good condition." R+L and Corlett Express also argue that Plaintiffs cannot establish any damages because they were paid back in full by Everest, and because they have not established that the other damages they seek—i.e., damages for lost profits, loan costs, interest, and storage costs, among others—were foreseeable.

Plaintiffs initially opposed this position by arguing that there remained genuine issue of material fact as to the condition of the Ice Vending Machines at the time R+L and Corlett received them.[15] Plaintiff also argued that R+L and Corlett had not met their summary judgment burden because they did not produce affirmative evidence negating this element.[16] Additionally, Plaintiffs asserted that they did provide affirmative evidence that the Ice Vending Machines were in good

---

[15] (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 10–14.)

[16] (*See id.* at 10–12.)

condition in the form of Unishippers' and R+L's bills of lading, which did not indicate any damage to the Ice Vending Machines.[17]

As to the damages issue, Plaintiffs noted that "special and consequential damages may be recovered under the [Carmack] Amendment, including damages for delay, lost profits and reasonably foreseeable consequential damages."[18] Plaintiffs claim that the identification on a bill of lading and a manifest that the items were "Ice vending machines"[19]—to which there is no dispute—supports the view that R+L and Corlett Express knew (or should have known) of Plaintiffs' intended use of the machines before or at the time the bill of lading was issued and therefore such damages were foreseeable.[20]

Although R+L and Corlett Express take exception to Plaintiffs' use of the bill of lading as sufficient proof of the "good condition" of the Ice Vending Machines, their argument is of no consequence. That is because in their supplemental brief in opposition, Plaintiffs presented direct evidence of the initial condition of the Ice Vending Machines.[21] Plaintiffs have now presented the Rule 30(b)(6) deposition testimony of Everest establishing that Everest only shipped "new machines" that

---

[17] (*See id.* at 12–14.)

[18] (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 16 (quoting *Delta Stone*, 304 F. Supp. 3d at 1130).).

[19] (*See, e.g.,* Corlett Express's Mot., ECF No. 55-5, at 2–3 (identifying equipment as "Ice vending machine" on bill of lading); ECF No. 55-6, at 8 (identifying equipment as "ICE VENDING MACHINE" on manifest).)

[20] (*See* Pls' Mem. in Opp'n to R+L, ECF No. 57, at 20.)

[21] (*See* Pls' Supp. Mem to R+L, ECF No. 80, at 4–6.)

were not damaged."[22]  Further, Plaintiff provided photographs that appear to indicate that the Ice Vending Machines were in good condition before they left Everest's control.[23]  Additionally, Plaintiffs presented Corlett Express's 30(b)(6) deposition, in which its witness testified, among other things, that the words "torn," "bent," and "scratched," which were noted on Corlett Express's loading manifests for the Ice Vending Machines, either "applied to the machine itself" or applied to the packaging surrounding the Ice Vending Machines.[24]  And finally, Plaintiffs presented deposition testimony from both R+L and Corlett to establish that they both "knew these were ice vending machines."[25]

R+L and Corlett Express challenge this supporting evidence and assert that summary judgment is still warranted.  Among other things, they claim that the photographs lack foundation, that Everest's testimony speaks only to when the Ice Vending Machines left Everest's manufacturing facility but not when they left its storage facility, and that it remains unclear as to whether the annotations that the Ice Vending Machines were torn, bent, and scratched referred to the packaging surrounding the Ice Vending Machines or the actual Machines.[26]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[22]  (*See id*. at 4.)

[23]  *(See id*. at 5.)

[24]  (*See* Pls' Supp. Mem. to Corlett Express, ECF No. 79, at 6–7.)

[25]  (*See id*. at 4, 7; Pls' Supp. Mem. to R+L, ECF No. 80, at 3, 6–7.)

[26]  (*See* R+L's Resp. to Supp. Mem., ECF No. 82, at 3–4; Corlett Express's Resp. to Supp. Mem., ECF No. 83, at 2–4.)

matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute of material fact exists, the court examines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When making that determination the court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

After examining the parties' briefs and the evidence presented, particularly the supplemental evidence presented, the court finds that there are genuine issues of material fact still in dispute. First, as discussed above, there remain factual disputes as to the condition of the Ice Vending Machines when they were picked up by R+L and Corlett Express.

And second (although it is a closer issue), there are also fact questions on the damage issues. Specifically, there remain disputed issues of fact as to whether R+L and Corlett Express's knew that the Ice Vending Machines—which were being transported to Southern Utah in the heat of mid-summer—were intended to sell ice and their understanding that by delivering damaged machines they may have prevented Plaintiffs from profitably using them. Plaintiffs have identified lost profits, loan costs, storage fees, startup costs, and attorneys' fees that claim they incurred or lost as a result of receiving the damaged Ice Vending Machines.[27]

---

[27] (*See* Pls' Opp'n to R+L, ECF No. 57, at 17 (citing ECF No. 49-3 at 4).)

Plaintiffs seek recovery from R+L and Corlett Express for these additional damages.[28]

R+L and Corlett Express argue that such damages would only be recoverable if they had been given advance notice as to them. But the law under the Carmack Amendment appears to permit greater flexibility. Rather, it has been held that a plaintiff is entitled to "all damages resulting from" the carrier's negligence. *See Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (quoting *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936)).[29] Courts applying this standard have concluded that many of the damages sought by Plaintiff here are recoverable as damages under a Carmack Amendment claim so long as the carrier has "knowledge of facts that would apprise it that plaintiff would sustain loss in that particular, the measure of damages is the value of the use during the time of delay." *Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d 1302, 1306 (10th Cir. 1981) overruled on different grounds by *Underwriters at Lloyds*, 890 F.2d at 1113 (overruling *Reed* and other decisions to the extent they held that state law claims are not preempted by the Carmack Amendment); *see also Delta Stone*, 304 F. Supp. 3d at 1130 (noting

---

[28] To the extent Plaintiffs seek attorneys' fees, even if deemed foreseeable, such damages may not be available under the Carmack Amendment in this context. *See, e.g., Renouf v. Aegis Relocation Co. Corp.*, 641 F. Supp. 3d 439, 449 (N.D. Ohio 2022) (noting that the Carmack Amendment appears to only authorize attorneys' fee awards fees involving the shipment of household goods) (citations omitted). Because R+L and Corlett Express did not raise this argument in their summary judgment briefing (*see, e.g.*, ECF Nos. 49, 55, 65, 69) the court need not address it at this time.

[29] In fact, Corlett Express acknowledges that Plaintiffs did not need "to detail the possibility of consequential damages on the bill of lading to prove its case." (*See* Corlett Express's Reply, ECF No. 69, at 16.)

that "damages for delay, lost profits and reasonably foreseeable consequential damages" are recoverable under the Carmack Amendment).

In *Reed v. Aaacon Auto Transport*, the plaintiff contracted to ship his Alfa Romeo sportscar but it was never delivered. After locating the car some five months later, plaintiff demanded payment of the fair market value of the car plus other incidental expenses. The district court not only awarded plaintiff the fair market value of the car, but it also awarded him his expenses for storage fees and transactional costs to locate and ultimately dispose of the damaged car. *See Reed*, 637 F.2d at 1305. In affirming these damages, the Tenth Circuit noted that it is not always necessary that the facts of potential special damage must be mentioned or made express as a part of the contract "when they are known to the carrier under such circumstances, or they are of such character that the parties may be fairly supposed to have them in contemplation in making the contract." *Id.* at 1306 (cleaned up). In affirming plaintiff's recovery of his additional expenses as damages, the *Reed* court noted that it was not unreasonable to conclude that the carrier was aware that plaintiff's car "was his principal if not sole means of transportation and that [plaintiff] would necessarily incur expenses in acquiring a substitute vehicle." *Id.*

A number of other courts have permitted similar damages for Carmack Amendment claims. For example in *Project Hope v. M/V IBN SINA*, No. 97-CV-3853, 2001 WL 1875854 (S.D.N.Y. July 17, 2001), the court awarded the plaintiff incidental damages for a Carmack Amendment claim that included fees and

expenses for (1) a survey to assess the loss, (2) for storage of a refrigerated container at a terminal, (3) for transporting the damaged goods back to a warehouse, and (4) for the transport and disposal of the damaged goods. *Id*. at *1–2. In doing so, the court noted that because the carrier was aware that the bill of lading identified the products shipped as "Medical Products" and provided temperature requirements, the clean-up costs incurred by plaintiff associated with the failed shipment were a foreseeable consequence. *See id*. at *2.

And in *Ensign Yachts, Inc. v. Arrigoni*, No. CIV. A. 3:09-CV-209, 2009 WL 4040394 (D. Conn. Nov. 19, 2009), the plaintiff arranged for the transport of his 55' yacht from New Jersey to Florida. The yacht was damaged when it became partially dislodged from the defendant's truck and "came into contact with the surface of the highway" while in transit. *Id*. at *4. In analyzing whether plaintiff had presented a prima facie claim, the court noted that it appeared the plaintiff was entitled to damages for storage of the damaged yacht and was entitled to its expenses for "public adjuster fees," "loan-related expenses because [the yacht owner] needed to take out a loan to pay for repairs," and for "lost profits because the original purchaser of the vessel canceled its purchase agreement and the vessel was eventually sold at a lower price." *Id*. at *5. The court found that each category of damages was foreseeable. *Id*.[30]

---

[30] In support of their motions, R+L and Corlett Express both cite to *Suttle v. Landstar Inway, Inc.*, Civ. No. H-08-858, 2009 WL 1297470 (S.D. Tex. May 4, 2009), as instructive on the damages issue. *Suttle* concerned the shipment of a CNC machine from Ohio to Texas. The CNC machine was damaged by rain in transit that made it unsafe and unmarketable. The *Suttle* plaintiffs sought damages for lost profits resulting from their inability to operate the CNC machine. The court, however, rejected that claim and granted summary judgment

Here, Plaintiffs seek the profits they claim they lost from not having use of the Ice Vending Machines during the summer months, the loan costs they claim they paid in connection with acquiring the Ice Vending Machines, the storage fees they incurred, and other incidental damages.[31]  Drawing all reasonable inferences in the favor of the Plaintiff, as the court must do on summary judgment, *see Matsushita*, 475 U.S. at 587–88, and given the disclosed nature of the products being shipped, it is not an unreasonable interpretation of these facts to conclude (or for a jury to conclude) that R+L and Corlett Express could have foreseen that their failure to deliver the Ice Vending Machines in good order might give rise to a claim for some or all of these incidental damages.[32]  Whether Plaintiffs can ultimately establish the amount of such damages and the foreseeability of such damages is a factual matter that must be determined by a factfinder.

---

to the defendant carrier, noting that plaintiffs never "provided [the carrier] with actual notice of the intended use of the CNC machine prior to or at the time the bill of lading was issued." *Id*. at *4.  In doing so, the *Suttle* court noted that the only information provided to the carrier was the machine's "physical size and weight." *See id*.  Thus, the carrier in *Suttle* was unaware of what use the CNC machine was to be put.  Here, there remains a factual dispute as to whether identification of the Ice Vending Machines as "Ice vending machines"—i.e., machines to sell ice—on the bill of lading provides enough information that the carriers would have known or should have known of the intended use of the Ice Vending Machines.

[31]  In their summary judgement motions, R+L and Corlett Express did not present any substantive challenge to Plaintiffs' calculation of damages.

[32]  *Cf. Gardiner v. York*, 2006 UT App 496 ¶ 13, 153 P.3d 791, 795 (Utah Ct. App. 2006) (McHugh, J.) (recognizing that under Utah law whether expenses are the foreseeable result of a breach of contract is a "question of fact appropriately resolved by the trial court"); *Huffman v. Saul Holdings Ltd Partnership*, 194 F.3d 1072, 1083 (10th Cir. 1999) (examining claim for lost business under Oklahoma law noting that whether lost profits were contemplated by the parties at the time agreement was made is a question of fact to be determined by the trier of fact).

CONCLUSION

Accordingly, based on the foregoing,

IT IS ORDERED that R+L's motion for summary judgment (ECF No. 49) is GRANTED IN PART and DENIED IN PART. Summary judgment is granted to R+L with respect to Plaintiffs' Third and Seventh Causes of Action (*see* ECF No. 36 at ¶¶35–41 & 64–68) but denied as to Plaintiffs' Second Cause of Action (*see* ECF No. 36 at ¶¶29–34); and

IT IS FURTHER ORDERED that Corlett Express's motion for summary judgment (ECF No. 55) is GRANTED IN PART and DENIED IN PART. Summary judgment is granted to Corlett with respect to Plaintiffs' Third and Seventh Causes of Action (*see* ECF No. 36 at ¶¶35–41 & 64–68) but denied as to Plaintiffs' Second Cause of Action (*see* ECF No. 36 at ¶¶29–34).

DATED this 22nd day of August 2024.

BY THE COURT:

_____
Hon. Ann Marie McIff Allen
United States District Judge